IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**BILLY BALDONADO,**

      **Plaintiff,**

vs.                                                                                                    No. CIV 02-1055 WDS

**JO ANNE B. BARNHART, Commissioner**
**of the Social Security Administration,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision filed on April 10, 2003. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for supplemental security income or disability insurance benefits. The Court, having considered Plaintiff's Motion [docket # 11] and Memorandum Brief [docket # 12], Defendant's Response [docket # 15], Plaintiff's Reply [docket # 16], the administrative record and applicable law, finds that Plaintiff's Motion should be **GRANTED IN PART,** and that this matter should be remanded to the Commissioner for further proceedings in accordance with this Memorandum Opinion and Order.

### I.  Background

Plaintiff, who was born on January 28, 1954, filed his initial application for disability insurance benefits ("DIB") under Title II of the Social Security Act on November 4, 1994. Tr. 232-235. An ALJ held a hearing on Plaintiff's claims on February 21, 1996, Tr. 93-132, and issued a decision unfavorable to Plaintiff on May 29, 1996. However, the Appeals Council subsequently remanded the claim for additional proceedings. Tr. 222-225.

On December 16, 1996, Plaintiff protectively filed another application for DIB as well as for supplemental security income ("SSI") under XVI of the Social Security Act. Tr. Tr. 492-494, 908-910. After Plaintiff's new applications were denied and Plaintiff requested a hearing before an ALJ, the Appeals Council consolidated Plaintiff's new applications with Plaintiff's remanded claims. Tr. 44. On March 23, 1999, the ALJ held a hearing on the consolidated matters. Tr. 133-188. Plaintiff appeared at the hearing and was represented by counsel. Tr. 135.

In a decision dated June 24, 1999, the ALJ denied Plaintiff's claims for DIB and SSI. Tr. 44-65. Plaintiff then filed a request for review with the Appeals Council on July 20, 1999, Tr. 40. The Appeals Council denied Plaintiff's request for review on July 19, 2002, Tr. 13-14, and thereby rendered the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). *See* 20 C.F.R. §§ 404.981, 416.1481. While Plaintiff's request for review was pending before the Appeals Council, Plaintiff filed another claim for SSI only on May 23, 2000. Plaintiff's May 2000 claim for SSI was approved, and he was found to be disabled as of June 2000. Ex. A to Pl.'s Mem. Br. Plaintiff's entitlement to SSI and DIB from his alleged onset date of December 15, 1993 through June 2000 remain at issue in this case.

On August 22, 2002, Plaintiff filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). After consent by the parties, this case was reassigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) on March 28, 2003 [docket # 10].

## II.  Standard of Review

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Andrade v. Secretary of*

2

*Health & Human Servs.,* 985 F.2d 1045, 1047 (10th Cir. 1993). In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence, nor should it substitute its judgment for that of the Commissioner. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994). Instead, the Court should meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1993). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

The issue in this case is whether Plaintiff is "disabled" and therefore entitled to benefits under Titles II and XVI of the Social Security Act. A sequential five-step analysis applies in determining whether an adult claimant is disabled. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988); 20 C.F.R. §§ 404.1520, 416.920. First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment

prevents the claimant from doing past work. *Id.* The claimant is not disabled if he or she can perform past work. *Id.* If the claimant cannot perform past work, the analysis proceeds to step five, where the burden shifts to the Commissioner to establish that the claimant has the residual functional capacity ("RFC") "to perform other work in the national economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)). The claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

### III. Summary of the ALJ's Decision

At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 45. The ALJ found at step two that Plaintiff had severe impairments of "a cervical sprain, degenerative arthritis in the neck and shoulders, post-traumatic dizziness and vestibular dysfunction, chronic pain, a hearing loss in the right ear, residuals of a right ankle injury, hypertension, and psychiatric problems." *Id.* At step three, the ALJ found that Plaintiff did not have any impairment that met or medically equaled a Listed Impairment. *Id.* The ALJ found at step four that Plaintiff retained the ability to perform "at least simple unskilled work activity at a limited light exertional level," Tr. 55, and could not perform his past relevant work as a painter and drywall finisher, *see* Tr. 63-64. At step five, the ALJ determined that Plaintiff could perform other work that exists in significant numbers in the regional and national economies, including bench assembler and stone setter. Tr. 64.

### IV. Discussion

Plaintiff contends that the ALJ erred at step three when she failed to find that Plaintiff's

impairments met or medically equaled certain Listings. Plaintiff also contends that the ALJ erred at step four when she assessed Plaintiff's RFC, and at step five in her use of a vocational expert.

### A. Asserted Errors at Step Three
### 1. Listings §12.04 and §12.07

Plaintiff's first contention is that the ALJ erred when she failed to find that Plaintiff is presumptively disabled under Listings §12.04 and §12.07, which set forth the criteria that a claimant must meet in order to be found presumptively disabled on the basis of an affective disorder (12.04) and a somatoform disorder (12.07). Specifically, Plaintiff argues that the ALJ erred when she failed to set out her reasons for her findings under the "B" criteria. These Listings are divided into parts A, B, and C, and in order to satisfy that Listing a claimant must meet the requirements of both part A and B, or the requirements of part C.

On remand, the ALJ was ordered by the Appeals Council to, "Further evaluate the Claimant's mental impairment and complete a Psychiatric Review Technique Form ["PRTF"] in accordance with 20 C.F.R. 404.1520a providing appropriate rationale in support of the "B" and, as applicable, the "C" criteria rating noted in the form." Tr. 224. The ALJ did complete the PRTF as ordered by the review council and found that Plaintiff met the "A" criteria for Listing §12.04 in that there was evidence present of depressive syndrome characterized by anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking and thoughts of suicide. Plaintiff had also received a diagnosis of major depressive disorder. The ALJ also made a finding that Plaintiff met the "A" criteria for Listing §12.07 as there was evidence that Plaintiff had an unrealistic interpretation of physical signs or sensations

associated with the preoccupation or belief that one has a serious disease or injury and that Plaintiff had received a diagnosis of somatoform disorder.

Under the "B" criteria, the ALJ found Plaintiff to have slight restriction of his activities of daily living; to have moderate difficulties in maintaining social functions; to often have deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere); and, to have never had episodes of deterioration or decompensation in work or work-like settings which cause him to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

In her decision, the ALJ discussed, in detail, the evidence as it related to his conclusions on the PRTF. Tr. 50 - 55, 58 - 61, 63. Accordingly, this Court finds that the ALJ did not fail to set out her reasons for her findings under the "B" criteria.

### 2. Listing § 12.05

Plaintiff also alleges that the ALJ erred when she failed to "consider equivalence to the listings at §12.05." Plaintiff argues that although "an IQ between 70 and 75 does not fall within the specific regulations of the Listings at §12.05(C), individuals within this range should be evaluated for equivalence." In doing so, Plaintiff cites *Brouse v. Chater*, 161 F.3d 11 (9th Cir. 1998), an unpublished Ninth Circuit case to justify her argument.

To meet or equal §12.05(C), a Plaintiff must satisfy a two-part test. A Plaintiff must show a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 CFR §404, Subpt P., App. 1. Whether a Plaintiff meets or equals a listed impairment is strictly a medical determination. 20 CFR §§404.1525(b), 416.926(b). This allows for a "presumption of disability that

makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

In claiming that the ALJ should have considered at step three Plaintiff's physical impairments, Plaintiff is improperly trying to combine the functional analysis performed at subsequent steps into step three in the guise of medical equivalence. *Id.,* at 531 ("A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment."), *see also, Cockerham v. Sullivan*, 895 F.2d 492, 496 (8th Cir. 1990) ("A claimant whose alleged impairment is an I.Q. of 70 - 79 inclusive has alleged a severe impairment and may be considered disabled after consideration of vocational factors."). Thus, the ALJ's conclusion that Plaintiff did not meet the §12.05(C) listing is supported by substantial evidence.

## B. Asserted Errors at Step Four

### 1. Weighing opinions of various physicians

Plaintiff's first contention is that the ALJ failed to follow the orders of the Appeals Council to specifically weigh the opinions of treating, consulting and examining source opinions and accord them each their proper weight. Specifically, Plaintiff argues that the ALJ "mischaracterized the evidence to minimize the opinions" of Plaintiff's treating physicians.

The order by the Appeals Council regarding this issue was as follows:

> Give consideration to the treating and examining source opinions, pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p, and the nonexamining source opinions pursuant to the provisions of 20 CFR 404.1527(f) and Social Security Ruling 96-6p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating and examining sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments. (20 CFR 404.1512).

In making his argument, Plaintiff separates the ALJ's analysis into two areas – psychiatric treatment and physical treatment. As to Plaintiff's claim regarding his psychiatric treatment, Plaintiff claims that the ALJ dismissed the findings of his two treating psychiatrists, Dr. Seeger and Dr. Johnson, and accepted the opinion of Dr. Sacks, who performed an examination for the SSA, and Dr. Loubriel-Kampa, a pain management specialist hired by Plaintiff's worker's compensation carrier.

This Court disagrees with Plaintiff's contention that the ALJ dismissed the finding of Dr. Seeger and Dr. Johnson. The ALJ carefully detailed Plaintiff's history with these two physicians and found that there was very little objective evidence to substantiate either Dr. Seeger's or Dr. Johnson's opinions that Plaintiff was permanently and totally disabled and unable to work. Other than Dr. Johnson's records from Plaintiff's stay at Charter Heights Hospital in May, 1996, neither physician provides any specific mental status evaluations or findings in regard to Plaintiff's actual level of cognitive functioning.

Plaintiff first saw Kathleen Johnson, M.D. when he was admitted to Charter Heights Hospital on April 9, 1996, following a suicide attempt. Tr. 633 - 97. On discharge, Plaintiff was alert and oriented with depressed mood and blunted affect. Tr. 636. His diagnosis was Major Depressive Disorder, Recurrent and his GAF was rated at 50.[1] Tr. 637. Dr. Johnson continued to treat the Plaintiff through May, 1998. Tr. 810 - 34, 882 - 84. With the exception of the hospital admission, Dr. Johnson's records consist of handwritten notes of her sessions with Plaintiff. *Id.* In a January

---

[1]The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed.2000) p. 32. A GAF of 41 - 50 indicates serious symptoms such as suicidal ideation or any serious impairment in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed.2000) p. 34.

8, 1998 letter, Dr. Johnson opined that Plaintiff carried a diagnosis of Major Depressive Disorder and Chronic Pain Syndrome. Tr. 884. She went on to state, "He continues to have difficulty with concentration, low mood and low energy level. He has difficulty with any activities that require persistence, pace or concentration. He has also had difficulty with mood swings and has had difficulty working with others." *Id.* Dr. Johnson concluded her letter by stating that Plaintiff is unable to perform any type of work. *Id.*

Dr. Christine A. Seeger began working with Plaintiff on November 5, 1998. Tr. 897 - 901. She continued seeing him through March 19, 1999, when she stated in a letter that Plaintiff was extremely depressed due to his chronic pain and vertigo. Tr. 897. She stated that his activities were severely restricted and that he was fully disabled from any employment. *Id.*

Several years earlier, Plaintiff had received treatment from the Pain Rehabilitation Day Treatment Program. Tr. 592 - 632. There he received psychiatric treatment from Dr. Blanca Loubriel-Kampa and physical therapy from October, 1994 through August, 1995. *Id.* Dr. Loubriel-Kampa opined that Plaintiff continued to present with a significantly exaggerated perception of his own disability. Tr. 330. On November 23, 1994, her diagnosis of Plaintiff was Somatoform Pain Disorder and she rated his GAF at 75.[2] Tr. 331.

Plaintiff saw Dr. Steven I. Sacks on April 11, 1997 for a Psychiatric Consultative Examination. Tr. 773 - 78. Dr. Sacks believed that Plaintiff was experiencing a major depression with a great deal of medical anxiety "to the point of possibly a second diagnosis of panic disorder with

---

[2] A GAF of 71 – 80 suggests that if symptoms are present, they are transient and expectable reactions to psychosocial stressors; no more than slight impairment in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed.2000) p. 34.

mild agoraphobia." Tr. 777. Dr. Sacks rated Plaintiff's GAF to be a 65,[3] at that time and during the past year. Tr. 778. Dr. Sacks stated the following: "He is able to understand simple instructions. He seems to be able to maintain the attention required to perform simple, repetitive tasks, but not much beyond that. I believe that he would have difficulty withstanding the stresses and pressures associated with day-to-day work activities. I consider his impairment to be marked." *Id.*

After discussing her finding that there was very little objective evidence to substantiate either Dr. Seeger's or Dr. Johnson's opinions that Plaintiff was permanently and totally disabled and unable to work, the ALJ stated that she found Dr. Sacks' "overall assessment consistent with an ability to perform at least simple, unskilled work activity, and I find, based on his mental status examination, that the claimant has no more than a moderate degree of limitation in his ability to maintain concentration and pace." Tr. 60 - 61. However, the ALJ appears to have failed to consider Dr. Sacks' statement that Plaintiff would have difficulty withstanding the stresses and pressures associated with day-to-day work activities. Furthermore, the ALJ made an assumption that Dr. Sacks' used the term "marked" quite differently from the way it is defined in the Listings of Impairments.

This Court finds that, for the most part, the ALJ appropriately considered all the opinions of Plaintiff's treating physicians as well as consulting physicians. Her decision to discount the opinions of Dr. Seeger and Dr. Johnson is supported by substantial evidence as was her decision to rely on Dr. Sacks' overall assessment of the Plaintiff. However, in giving controlling weight to Dr. Sacks, the

---

[3] A GAF of 61 - 70 indicates some mild symptoms such as depressed mood or some difficulty in function, but "generally functioning pretty well, has some meaningful interpersonal relationships. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed.2000) p. 34.

ALJ then, on her own, determined what opinions of Dr. Sacks she chose to rely on. The ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability. *Hamlin v. Barnhart*, 2004 WL 945110 (10th Cir. 2004).

The ALJ, without any evidence, improperly assumed that Dr. Sacks defined "marked" in a different way than the Listings of Impairments. Also, it is unclear from the ALJ's decision as to whether she considered Dr. Sacks' opinion regarding Plaintiff's ability to withstand the pressures and stresses of day-to-day work activity. Therefore, this case will be remanded for proper findings as to Dr. Sacks' opinions. Particularly, the ALJ shall determine how Dr. Sacks defines the term "marked" in the way he used it in referring to Plaintiff's level of impairment and, further, discuss Dr. Sacks' finding regarding Plaintiff's ability to work.

### 2. Consideration of mental and psychological impairments

Plaintiff alleges that the ALJ failed to consider the severity of his mental and psychological impairments, namely his IQ of 71 and the fact that Dr. Sacks assessed his mental impairments to be "marked." When a mental impairment is alleged, the ALJ must assess the claimant's mental RFC. 20 C.F.R. § 416.945(c). When a claimant suffers from a severe mental impairment that does not meet or equal the criteria of the listings for mental disorders, "[t]he determination of mental RFC is crucial to the evaluation of an individual's capacity to engage in substantial gainful work activity." Id. Pt. 404, Subpt. P, App. 1, § 12.00(A). The ALJ must assess the mental abilities of "understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." Id. § 416.945(c). The rulings specify that [i]n assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work

activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. Soc. Sec. Ruling 96-8p.

This Court addressed the IQ issue earlier in this opinion and finds no error in the ALJ's consideration of Plaintiff's IQ. As to the issues regarding Plaintiff's alleged mental impairment, this Court has remanded this matter back to the ALJ with instructions to make further findings regarding Dr. Sacks' opinions. Until that is done, Plaintiff's claim that the ALJ failed to consider the severity of his mental impairment in assessing his Residual Functional Capacity cannot be addressed.

### 3. Consideration of physical impairments

Plaintiff alleges that the ALJ failed to consider all of his impairments. Specifically, Plaintiff contends that the ALJ failed to consider his non-exertional impairments of pain, hand usage and residuals of a head injury. Contrary to Plaintiff's assertions, the ALJ did consider these alleged impairments. As to Plaintiff's statement that the ALJ failed to consider his ongoing pain, this Court finds that claim to be without merit. On almost every page of her decision, the ALJ recognized and cited to Plaintiff's numerous and long-standing complaints of pain, both in his hearing testimony and those included in the medical records. At page 62 and 63 of her opinion, the ALJ addressed several inconsistencies in Plaintiff's testimony that related to his complaints of pain. In conclusion, the ALJ stated:

> Specifically, the record is persuasive that the claimant can physically perform a limited range of light work activity. This finding is consistent with the relatively normal radiographic evidence, with the repeated work assessments of Dr. Cohn, with the claimant's somewhat noncompliant and conservative treatment regimen, with his actual level of everyday activities, and with many of his own estimates of exertional capabilities given in his hearing testimony.

Tr. 63.

Plaintiff also contends that the ALJ failed to consider an alleged hand usage impairment. However, in a thorough review of the medical records, the ALJ tracked Plaintiff's complaints and examination regarding his upper extremities. Tr. 47 - 11/94, EMG and nerve conduction study normal except prolonged response in left upper extremity consistent with mild radiculitis; Tr. 48 - 1/96, good strength, sensation in upper extremity; Tr. 56 - 5/96, Plaintiff can use hands for simple grasping and fine manipulation; Tr. 48 - 2/97, EMG and nerve conduction test normal; Tr. 49 - 2/97, strength in upper extremities; Tr. 50 - 12/98, report of numbness of fingers of left hand; Tr. 50 - 3/99, unable to perform fine manipulations. In his review of Plaintiff's medical records, the ALJ noted that his radiographic findings had been relatively unremarkable. Tr. 56. The ALJ addressed the March, 1999 work assessment regarding the limitation as to fine manipulation but properly noted that it was unclear as to what prompted the new limitation of fine manipulation. He noted that although Dr. Cohn's examination of October, 1998 revealed a slight degree of hand pain and numbness secondary to leaning on his elbows, Dr. Cohn attributed that to transient neuropathy. Dr. Cohn's next and final note made no further mention of hand compromise or problems. In conclusion, the ALJ stated, "Overall, the record shows no evidence of significant upper extremity limitations that would impair the claimant's ability to perform simple routine tasks." Tr. 57. This Court agrees and finds that the ALJ finding is supported by substantial evidence.

13

As to Plaintiff's allegation that the ALJ failed to consider alleged residuals of a head injury, this Court find that contention to be without merit as well. The ALJ directly addressed this issue at pages 57 and 58 of her opinion. In acknowledging Dr. Cruz' (the medical expert who testified at the hearing) concern and questions regarding the possible need for a neurologic examination, the ALJ appropriately noted that an earlier neurological evaluation failed to show any evidence of neurological dysfunction, that claimant's symptoms and alleged limitation have basically not changed since the date of that evaluation and that subsequent medical examinations have reported no significant neurological deficits. Tr. 58. The ALJ found no need for additional neurological development. This Court concurs.

### C. Asserted Errors at Step Five

Plaintiff alleges that the ALJ erred by relying on vocational expert testimony based on a hypothetical question that did not include all severe impairments. The hypothetical questions submitted to a vocational expert must state the claimant's impairments "with precision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.1991) (quotation omitted). Because the ALJ may or may not have improperly assessed plaintiff's evidence of mental impairments, it follows that she may or may not have failed to properly consider plaintiff's combination of physical and mental impairments. Therefore, the limitations expressed in the hypothetical question she posed to the vocational expert may or may not have been supported by substantial evidence. Again, as this Court has remanded this matter for further findings regarding Plaintiff's alleged mental impairment, issues regarding questions asked to the vocational expert as to Plaintiff's impairments cannot be addressed at this time.

### V. Conclusion and Summary

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion to Reverse or Remand

Administrative Agency Decision [docket #11 ] is **GRANTED IN PART,** and this matter shall be remanded to the Commissioner of Social Security for further proceedings in accordance with this Memorandum Opinion and Order.

 

_____
**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**